UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAMY GHARB, | ) |
| | ) |
| Plaintiff, | ) No. 10 C 07204 |
| | ) |
| v. | ) |
| | ) Judge Edmond E. Chang |
| MITSUBISHI ELECTRIC | ) |
| AUTOMATION, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Samy Gharb filed a first amended complaint against Defendant Mitsubishi Electric Automation, Inc. (for short, Mitsubishi Automation) claiming infringement on his patent, U.S. Patent No. 6,552,654.[1] R. 15. Mitsubishi Automation moves to dismiss the first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 23. For reasons explained more fully below, Mitsubishi Automation's motion is granted.

**I.**

In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations. Gharb is the inventor and owner of U.S. Patent No. 6,552,654, entitled "Security System with a Mobile Telephone." R. 15 (Am. Compl.) ¶ 7. The '654 patent was approved in 2003, and expired in 2007. *Id.*[2] In 2005, Gharb met with

---

[1]This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338.

[2]According to Defendant, this truncated time period between issuance and expiration is explained by Gharb's failure to pay the required maintenance fee. R. 24 at 2 (citing *Unitronics Ltd. v. Gharb*, 532 F. Supp.2d 25, 26 (D.D.C. 2008)).

representatives from Mitsubishi Electric Corporation (to distinguish from the named defendant, the opinion will refer to this company as "Mitsubishi Electric")[3] about executing a license agreement for Gharb's security system technology. *Id.* ¶ 8. The parties discussed Gharb's patents and pending patent applications; however, a license agreement was not reached. *Id.* ¶¶ 8, 11.

Gharb alleges that Mitsubishi Automation manufactures, imports, distributes, and/or sells security systems with mobile telephones under the name or model designation of "ALPHA Family." *Id.* ¶ 6. Gharb contends that "[c]ertain of the ALPHA Family security systems devices fall within the scope of protection of at least claim 1 of the '654 patent, literally and/or under the Doctrine of Equivalents." *Id.* ¶ 9. According to Gharb, Mitsubishi Automation's ALPHA Family security systems use programmable logic controllers that infringe claim 1 of the '654 patent. *Id.* ¶ 6. Gharb also alleges that Mitsubishi Automation indirectly infringed the '654 patent by "aiding and causing end users of ALPHA Family security systems devices to use such devices with a mobile communications apparatus within the United States, and aiding and causing the distributors and/or dealers of Mitsubishi Automation to sell and offer to sell ALPHA Family security systems in combination with, or with instructions for a user to purchase, a mobile communications device within the United States." *Id.* ¶ 10.

---

[3]Gharb alleges that Mitsubishi Electric Corporation is a Japanese company affiliated with Defendant Mitsubishi Automation. Am. Compl. ¶ 2. Mitsubishi Electric Corporation was initially named as a defendant in the instant lawsuit, but voluntarily dropped from the case when Gharb filed the first amended complaint.

Gharb accuses Mitsubishi Automation of direct, contributory, and induced patent infringement under 35 U.S.C. § 271. *Id.* ¶¶ 9-10. Mitsubishi Automation moves to dismiss Gharb's complaint for failure to state a claim.

II.

Although this patent case is governed by the appellate law of the Federal Circuit, the Court applies the procedural law of the Seventh Circuit. *See CoreBrace LLC v. Star v. Seismic LLC*, 566 F.3d 1069, 1072 (Fed. Cir. 2009) ("The question whether a Rule 12(b)(6) motion was properly granted is purely a procedural question not pertaining to patent law, to which this court applies the rule of the regional circuit.") (internal quotation omitted); *McZeal v. Spring Nextel Corp.*, 501 F.3d 1354, 1355-56 (Fed. Cir. 2007).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But only certain allegations—factual ones—count toward assessing whether a complaint states a plausible claim. A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). Determining plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. When ruling on a defendant's motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the plaintiff's factual allegations as true and draw reasonable

3

inferences in the plaintiff's favor. *McGowan v. Hulick*, 612 F.3d 636, 637 (7th Cir. 2010).

## III.

Mitsubishi Automation argues that Gharb's first amended complaint is conclusory and does not meet the standards of *Iqbal* and *Twombly*. R. 24 (Def.'s Br.) at 1. Thus, Mitsubishi Automation contends that all of Gharb's alleged infringement claims must be dismissed.

### A. Direct Infringement

Direct infringement claims are governed by 35 U.S.C. § 271(a), which states, "whoever without authority makes, uses, offers to sell, or sells any patented invention . . . during the term of the patent therefor, infringes the patent." Form 18 in the Appendix to the Federal Rules of Civil Procedure provides a sample complaint for direct patent infringement. *See also* Fed. R. Civ. P. 84 ("The forms in the Appendix suffice under these rules and illustrate the simplicity and brevity that these rules contemplate."). The form instructs a plaintiff to include: (1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent "by making, selling, and using [the device] embodying the patent;" (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages. *McZeal*, 501 F.3d at 1357.

Here, Mitsubishi Automation argues that Gharb fails to identify which of Mitsubishi Automation's products allegedly infringe the '654 patent. Def.'s Br. at 7-8.

Although Gharb's complaint names the ALPHA Family of products, including the AL2-14MR-A product, Mitsubishi Automation contends that the ALPHA products are *not* security systems. *Id.* at 8. Instead, Mitsubishi Automation asserts that the ALPHA products that Gharb refers to are actually programmable logic controllers, or "PLCs." *Id.*

Gharb responds that his allegations meet the pleading requirements of Rule 12(b)(6), and the exhibits attached to the first amended complaint demonstrate that it is plausible that Mitsubishi Automation's ALPHA products are infringing. R. 28 (Pl.'s Resp.) at 4. Gharb also attached additional documents as exhibits to his response brief. *See* R. 28-1. Gharb argues that these exhibits show that Mitsubishi Automation (or its parent company) published material describing how the ALPHA products can be used in security systems and with GSM modems. Pl.'s Resp. at 4. Thus, Gharb contends that he has sufficiently identified the alleged infringing products. *Id.* at 5.

First, the Court is not required to consider the exhibits attached to Gharb's response brief. These exhibits are not part of the pleadings and are therefore normally outside the scope of the Rule 12(b)(6) analysis. *See Alioto v. Marshall Field's & Co.*, 77 F.3d 934, 936 (7th Cir. 1996); *United States ex rel. Walner v. NorthShore Univ. Healthsystem*, 660 F. Supp.2d 891, 893 n.1 (N.D. Ill. 2009). Although Gharb's exhibits are improperly attached to his response brief, the Court will consider them in this case to avoid further wheel-spinning in the form of Gharb seeking to amend the complaint for a second time. Rule 15(a)(2) instructs courts to freely give parties leave to amend their pleadings when justice so requires, and so if the additional exhibits were not

considered during this round of motion-to-dismiss briefing, it is likely that Gharb will try to amend the complaint again, adding the extra exhibits. Fed. R. Civ. P. 15(a)(2). Rather than kick the can down the road, the Court will consider the additional exhibits. As explained below, however, even if Gharb's additional exhibits are considered, he fails to state a claim for direct infringement.

Indeed, Gharb has pled and painted himself into a corner because both the exhibits attached to the amended complaint and the exhibits attached to the response brief[4] identify the ALPHA Family products as programmable logic controllers, not security systems. As Mitsubishi Automation points out, at most, a PLC may be a *component* of a security system. Def.'s Reply at 4. The '654 patent itself identifies the claimed security system as having five programmable logic controllers as only *part* of the claimed invention. R. 15, '654 patent, col. 5, ll. 30-35 (attached as exhibit to Amended Complaint). This reading of the patent is confirmed by a Federal Circuit case interpreting the '654 patent. *Unitronics (1989) (R"G) Ltd. v. Gharb*, 318 Fed. Appx. 902, 905 (Fed. Cir. 2008) (*per curiam*). In *Unitronics*, the Federal Circuit held that, in order to meet the claims of the '654 patent, an accused product must be more than just

---

[4]Mitsubishi Automation disclaims creating the exhibits. On their face, the exhibits bear the name, "Mitsubishi Electric," not Mitsubishi Electric Automation, Inc. In further support, Mitsubishi Automation attached the declaration of Scott Rohlfs, Senior Director of Product Marketing at Mitsubishi Automation, to its reply brief. *See* R. 29-1 (Rohlfs Decl.). According to Rohlfs, the seven exhibits attached to Gharb's response brief were not created by Mitsubishi Automation. *Id.* ¶ 3. Rohlfs also declared that Mitsubishi Automation does not make, import, or sell mobile phones, modems, alarm systems, or security systems. *Id.* ¶ 4. But the Court cannot consider the Rohlfs declaration at the motion-to-dismiss stage, so Mitsubishi Automation's disclaimer of the exhibits will not factor into the decision.

6

"a PLC communicating over [the Global System for Mobile Communications]."[5] In other words, a PLC alone cannot infringe the '654 patent. It is true that *Unitronics* was an appeal from a grant of summary judgment (against Gharb), rather than an appeal from a Rule 12(b)(6) dismissal. But the patent is clear on its face: claim 1 encompasses much more than just PLCs. And *Unitronics* did not refer to the discovery record when discussing the scope of claim 1. *Id.* at 904-05. The identification of PLCs alone does not state a claim for direct infringement of the '654 patent.

Gharb argues that *Unitronics* is not controlling because it involved a different company, a different product, and the defendant in *Unitronics* "did not manufacture a 'security system,' and sold only general purpose programmable logic controllers." Pl.'s Resp. at 2. Gharb claims that the instant case is different because he identifies the allegedly infringing products as "devices that are used as security and alarm systems under the name or model designation 'ALPHA Family' including but not limited to the 'Model AL2-14MR-A' controller." *Id.* at 3. Gharb's complaint generally alleges that Mitsubishi Automation manufactured, imported, offered for sale, distributed, and/or sold security systems that infringe at least claim 1 of the '654 patent, "including but not limited to, Model AL2-14MR-A controller." Am. Compl. ¶ 6. But the AL2-14MR-A controller is precisely that: a controller. Nothing in the exhibit cited by Gharb identifies the AL2-14MR-A as a security system. Am. Compl., Exh. 2. Gharb fails to identify a

---

[5]Although *Unitronics* is a non-precedential disposition, and does not have binding effect on the Federal Circuit (although it may have issue-preclusive effects), non-precedential dispositions offer "guidance" and "persuasive reasoning." Federal Circuit Rule 32.1(d).

*security system* that infringes the '654 patent for a security system with a mobile telephone.

Gharb's broader, and vaguer, allegation that the ALPHA Family products are security systems is not enough to put Mitsubishi on notice of which products Gharb claims infringe the patent. This is especially true in light of the exhibits that Gharb attached to the first amended complaint and response brief. These exhibits describe the ALPHA products as programmable logic controllers. As Gharb points out, the ALPHA products can be "use[d] *in* alarm and security systems, . . . *with* GSM mobile phone devices, and the programmed transmission of messages." Pl.'s Resp. at 4 (citing R. 28-1, Pl.'s Resp. Exh. A) (emphasis added); *see also id.* ("Exhibit B describes the ALPHA 2 series of products for use *in* security systems . . . .") (emphasis added). Gharb's exhibits demonstrate how the ALPHA controllers can be used to communicate messages (*see* Pl.'s Resp. Exh. A) and "used for automatic applications including . . . security systems." Pl.'s Resp. Exh. B at 1. The ALPHA controllers are also capable "of sending SMS data to a GSM modem to be forwarded to cellular telephones, e-mail addresses or fax machines." Pl.'s Resp. Exh. E at 1; *see also* Pl.'s Resp. Exh. G at 5 ("A GSM modem connected externally to the ALPHA2 control can send an SMS message to one or more mobile telephone(s) (GSM band) or an e-mail or fax receiver . . . ."). As in *Unitronics*, it is not enough for Gharb to allege that Mitsubishi Automation sold PLCs that could communicate over GSM because, "[t]o prove infringement, he [is] required to show that [Mitsubishi Automation's] devices met *all* of the limitations of the claim." *Unitronics*, 318 Fed. Appx. at 905 (emphasis in original).

8

And Gharb's bare allegation that Mitsubishi Automation sells "security systems" is too conclusory to provide fair notice of the basis of Gharb's infringement claim. *Iqbal*, 556 U.S. at 681; *see, e.g., Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, 2011 WL 1706136, at *3 (N.D. Ill. May 5, 2011) ("Under *Iqbal* and *Swanson*, [the defendant] is entitled to be to be put on notice, with some specificity and clarity, which of its products are at issue in this suit, and which are not."); *Bender v. Motorola, Inc.*, 2010 WL 726739, at *3 (N.D. Cal. 2010) (granting defendant's motion to dismiss because plaintiff failed to identify the particular product or line of products that allegedly infringe the product). Gharb must "plead facts sufficient to place the alleged infringer on notice as to what he must defend." *McZeal*, 501 F.3d at1357 (citing *Twombly*, 550 U.S. at 565). *McZeal*, a case decided after *Twombly* but before *Iqbal*, held that the plaintiff sufficiently plead a cause of action for direct infringement by alleging (1) plaintiff's ownership of the patent-in-suit, (2) the "means by which" the defendant allegedly infringed the patent, and (3) the particular device manufactured and distributed by defendant at issue. *Id.* at 1356-57. Here, Gharb fails to allege which "security system" product made or sold by Mitsubishi Automation infringes the '654 patent. Gharb's complaint does not state a plausible claim of direct infringement against Mitsubishi Automation. Accordingly, the Court grants Mitsubishi Automation's motion to dismiss the direct infringement claim.

### B. Indirect Infringement

There are two kinds of indirect-infringement patent claims: claims for contributory infringement and for induced infringement. "[T]he patentee always has

the burden to show direct infringement for each instance of indirect infringement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006) (citing *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004)). Also, indirect infringement requires that the party inducing or contributing to infringement know of the patent (or be willfully blind to the existence of such a patent) and that the product or activity at issue infringes. *Lucent Techs. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009). Gharb's indirect infringement claim is based on theories of both contributory infringement and inducing infringement.

1.

Generally, in order to be liable for contributory infringement, an infringer must sell, offer to sell or import into the United States a component of an infringing product "knowing [the component] to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c); *see Lucent Techs.*, 580 F.3d at 1320. In this case, Gharb fails to allege any facts that give rise to an inference that any of Mitsubishi Automation's products are not staple articles of commerce without substantial non-infringing uses. *See Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1327 (Fed. Cir. 2009). Once again, Gharb's own allegations undermine the complaint: the exhibits attached to the amended complaint and the exhibits attached to Gharb's response brief comprise marketing materials that describe the many uses of programmable logic controllers, with no limitation to security systems that use mobile telephones. For this reason, Gharb fails to state a claim for contributory

10

infringement. Mitsubishi Automation's motion to dismiss the contributory infringement claim is granted.

**2.**

Under 35 U.S.C. § 271(b), a party who "actively induces infringement of a patent shall be liable as an infringer." The Federal Circuit has instructed that the plaintiff in an inducement claim must allege not only that the defendant knowingly induced infringement, but that the defendant had a specific intent to encourage that infringement. *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 697-98 (Fed. Cir. 2008); *see also Global-Tech Appliances, Inc. v. SEB S.A.*, — U.S. —, 131 S. Ct. 2060, 2068 (2011) (holding that induced infringement requires knowledge that the inducing actions constitute patent infringement).[6] "[I]nducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU Med.*, 471 F.3d at 1306 (citing *MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936-37 (2005)). In determining whether a defendant possessed such intent, "direct evidence is not required; rather, circumstantial evidence may suffice." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005).

Gharb alleges that Mitsubishi Automation induced infringement of the '654 patent by "aiding and causing end users of ALPHA Family security systems devices to

---

[6]The Supreme Court was reviewing *Global-Tech* in a post-trial setting, and did not speak to the pleading requirements for indirect infringement under Federal Rule of Civil Procedure 8.

11

use such devices with a mobile communications apparatus within the United States, and aiding and causing the distributors and/or dealers of Mitsubishi Automation to sell and offer to sell ALPHA Family security systems in combination with, or with instructions for a user to purchase, a mobile communications device within the United States." Am. Compl. ¶ 10. Gharb further alleges that "Mitsubishi Automation, either directly or through the knowledge of its affiliated company, Mitsubishi Electric, was aware of Plaintiff Gharb's patent rights . . . . [Thus], Mitsubishi Automation's infringement during the relevant time period was willful, knowing, deliberate, and without a good faith belief that the '654 Patent was for some reason invalid or not infringed." *Id.* ¶ 11.

Gharb's inducement claim relies on the notion that "ALPHA Family security systems" are being sold in the United States. But Gharb has not identified an allegedly infringing "security system." *See supra* at 6-8. Rather, the ALPHA product referred to in the complaint is a programmable logic controller—a device that the Federal Circuit held cannot, as a matter of law, infringe the '654 patent. *Unitronics*, 318 Fed. Appx. at 905. In order to state a claim for inducement, Gharb must allege facts showing Mitsubishi Automation had knowledge that the '654 patent was somehow being directly infringed. *See Global-Tech*, 131 S. Ct. at 2068 ("[I]nduced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement."). Although Gharb sufficiently alleges that Mitsubishi Automation had knowledge of the patent-in-suit, he fails to plead facts showing that Mitsubishi Automation had knowledge of the allegedly infringing conduct. Gharb's vague assertion that Mitsubishi

Automation indirectly infringed the patent by selling "ALPHA Family security systems"—without identifying the security system, even in general terms—does not permit an inference that Mitsubishi Automation had specific intent to induce infringement.

The exhibits attached to the first amended complaint and response brief do not help Gharb's claim. Exhibit 2 attached to the first amended complaint (the only marketing exhibit the Court may properly consider) describes the features of the AL2-14MR-A programmable logic controller. *See* R. 15-1. For instance, this model PLC has "[r]emote maintenance and SMS text messaging via GSM cable." *Id.* The document also lists information about a Mitsubishi Electric GSM-Modem mobile phone. *Id.* Gharb's argument that this information demonstrates that Mitsubishi Automation may be infringing the '654 patent is precluded by *Unitronics*. Even viewed in the light most favorable to Gharb, the facts in the first amended complaint in conjunction with Exhibit 2 do not permit the inference that Mitsubishi Automation intended to induce infringement, nor do Gharb's allegations put Mitsubishi Automation or the Court on notice as to how the '654 patent was allegedly infringed.

Even if the Court considered the exhibits improperly attached to Gharb's response brief, the result would not change. For instance, Exhibit A advertises that the ALPHA controller "is ideal for a huge range of applications in many fields of industry and building services, including . . . [a]larm and security systems." *See* R. 28-1. The fact that Mitsubishi Automation had knowledge that its PLC can be used in "security systems" (as well as 15 other broad applications, including "greenhouses" and "special-

13

purpose vehicles") does not constitute a sufficient allegation that Mitsubishi Automation "knowingly induced infringement and possessed specific intent to encourage another's infringement." *Kyocera Wireless Corp. v. ITC*, 545 F.3d 1340, 1353-54 (Fed. Cir. 2008) (internal quotation omitted). Gharb does not allege any facts about the infringing "security systems"—*i.e.*, allegations that would bring the systems within the scope of the security system described in the '654 patent. *Cf. Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*, 2012 WL 202664, at *5 (S.D. Cal. Jan. 23, 2012) (denying motion to dismiss inducement claim because plaintiff alleged that defendant's product was identical to the patented product, in addition to several other facts suggesting knowledge of infringement). Based on the information in the exhibits and the first amended complaint, the Court cannot reasonably infer that the "security systems" use mobile phones at all. Finally, none of the exhibits even mention Mitsubishi Automation (as distinct from Mitsubishi Electric), which makes Gharb's inducement claim even more speculative. In short, Gharb has not pled sufficient facts showing that Mitsubishi Automation specifically intended to induce infringement of the '654 patent.

Accordingly, the Court grants Mitsubishi Automation's motion to dismiss the inducement infringement claim.

**IV.**

For the reasons stated above, the Court grants Mitsubishi Automation's motion to dismiss all claims with prejudice. R. 23. The dismissal is with prejudice because Gharb has already filed a first amended complaint, and his response brief (as discussed above) attempted to add allegations and exhibits, none of which save the claims.

ENTERED:

*/s/ Edmond E. Chang*

Honorable Edmond E. Chang
United States District Judge

DATE: June 4, 2012